IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ARLETTE SCHUETT,

                Plaintiff,                       No. 3:10-cv-784-HZ

      v.

ELI LILLY & COMPANY, a Foreign           OPINION & ORDER
Business Corporation, and CAMILLE
MYERS, an individual,

                Defendant.

Kim E. Hoyt
Spencer C. Rockwell
GARRETT HEMANN ROBERTSON, P.C.
1011 Commercial Street, N.E.
P.O. Box 749
Salem, Oregon 97308-0749

      Attorneys for Plaintiff


/ / /


1 - OPINION & ORDER

Ellen E. Boshkoff
Johane J. Domersant
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204

    Attorneys for Defendant

HERNANDEZ, District Judge:

    In this employment discrimination action brought by plaintiff Arlette Schuett, judgment in favor of defendants Eli Lilly & Company and Camille Myers was entered on March 12, 2012 following the trial of plaintiff's claims to a jury, and as to one claim, to the court. Defendants seek an award of costs in the amount of $12,648.59. I grant defendants' request in part and deny it in part. I award defendants $7,022.70 in costs.

STANDARDS

    Pursuant to Federal Rule of Civil Procedure 54(d)(1), "costs - other than attorneys' fees - should be allowed to the prevailing party." There is a presumption that the prevailing party will be awarded its costs. Save Our Valley v. Sound Transit, 335 F.3d 932, 944-45 (9th Cir. 2003). As a result, the losing party must show why costs should not be awarded. Id. Additionally, although the district court must specify the reasons for its refusal to tax costs, it is not required to do so when it abides by the presumption and taxes costs to the losing party. Id. at 945.

    The court has broad discretion to allow or to disallow a prevailing party to recoup costs of litigation, but the court may not tax costs beyond those authorized by 28 U.S.C. § 1920. Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995). Costs not listed in section 1920 may not be taxed to the losing party unless they are specifically authorized by some other statute or by contract. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440 (1987).

2 - OPINION & ORDER

DISCUSSION

Defendants' requested costs fall into three categories:  (1) $5,736.05 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"; (2) $6,781.90 for "[f]ees and disbursements for . . . witnesses"; and (3) $130.64 for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]"  28 U.S.C. § 1920(2), (3), (4).

I.  Transcripts

Defendants seek costs for three pretrial hearings, three depositions, and daily trial transcripts.  Generally, hearing transcript costs are recoverable under section 1920(2) provided they were "necessarily obtained for use in the case."  28 U.S.C. § 1920(2); see also Kyei v. Or. Dep't of Transp., No. 3:07-cv-1607-AC, 2010 WL 935489, at *3 (D. Or. Mar. 11, 2010) (allowing cost of summary judgment hearing transcript when court ruled orally from the bench); Nemo v. City of Portland, No. 3: 94-cv-1553–ST, 1996 WL 437633, at *8 (D. Or. Apr. 9, 1996) (allowing hearing transcript costs).

The costs of depositions and deposition transcripts are generally found to be reasonably necessary to the preparation of a case.  Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 176 n.3 (9th Cir. 1990); U.S. ex rel. Berglund v. Boeing Co., No. 03:02–cv–193–AC, 2012 WL 697140, at *2 (D. Or. Feb. 29, 2012).  "'Depositions are 'necessary' if introduced into evidence or used at trial for impeachment or cross-examination.'"  Id. (quoting Arboireau v. Adidas Salomon AG, No. 01–cv- 105–ST, 2002 WL 31466564, at *5 (D. Or. June 14, 2002)).

The $2,834.70 for deposition and deposition transcript costs are allowed.  However, I agree with plaintiff that the cost requests for the hearing and trial transcripts should be denied.

Plaintiff objects to the costs for the hearing and trial transcripts because defendants offer only a boilerplate explanation that they were "reasonably necessary to the conduct of the litigation for preparing pre-trial and trial memoranda, preparing direct examination questions for witnesses, anticipating cross-examination questions, and cross-examining the Plaintiff's witnesses in compliance with the Court's oral rulings during the pre-trial conference and trial." Defs.' Mem. at p. 4.

Defendants seek $217.80 for an expedited transcript of an August 19, 2011 telephone hearing regarding plaintiff's motion to compel. I granted the motion, ruling that plaintiff could take certain depositions and requiring defendants to produce documents regarding call records. An expedited transcript of this hearing is not a necessary expense under section 1920(2). Defendants do not suggest that my order required clarification or that there was some confusion or dispute related to my rulings. While a subsequent dispute between the parties about the format of the data produced by defendants in response to my August 19, 2011 Order resulted in plaintiff filing another motion to compel on October 18, 2011, defendants fail to explain why obtaining a transcript of the August 19, 2011 hearing was necessary to respond to that motion.

Defendants next seek $329.80 for the transcript of a January 30, 2012 pretrial conference in which I ruled on motions in limine and objections to witnesses and exhibits. Again, defendants fail to explain why a transcript of the pretrial conference was necessary. During the pretrial conference, counsel were free to ask clarifying questions regarding any of my rulings. My courtroom deputy remained available by telephone if there were questions as to rulings on specific exhibits and witnesses. Other than it being convenient for defense counsel to have a transcript of the pretrial conference, I find no basis for it being "necessary" within the meaning of

section 1920(2).

Defendants additionally seek $72.50 for a telephone hearing on February 3, 2012 pertaining to a motion in limine and supplemental briefing regarding two of plaintiff's trial exhibits. For the reasons stated above, I deny the request for $72.50 for the February 3, 2012 hearing.

Finally, defendants seek $2,281.25 for daily trial transcripts for a three-day trial conducted February 7-9, 2012. In a 2011 Opinion, Judge Acosta denied a request for daily trial transcripts because (1) the prevailing party did not obtain a stipulation from the opposing party or seek the court's prior approval that daily transcripts were necessary; and (2) the trial did not involve the complexity or length that would justify obtaining daily transcripts. Hunt v. City of Portland, No. 3:08-cv-802–AC, 2011 WL 3555772, at *8 (D. Or. Aug. 11, 2011). Judge Acosta explained that

> [t]he evidence was not complicated: no scientific, medical, financial, or similarly technical or complex testimony was presented at trial that might better support a claim of need for daily transcripts. The evidence consisted of witnesses, who described events they witnessed or experienced, and documents, almost [] all of which were letters, emails, police reports, and job applications. No engineering specifications, financial reports, medical records, environmental studies, patent drawings and claims, or other similarly complex material were part of the evidence at trial. Only one expert witness testified, called by City, but neither his testimony nor the portions of his expert report admitted into evidence begin to justify a request for transcripts of every trial day. Nor does the trial's eight-day length, in light of the straightforwardness of this evidence, provide support for City's suggestion that daily transcripts were needed. Even without applying the heightened standards used by some courts to examine "necessity" of daily transcripts under Rule 54, City's argument falls far short of rule's requirements.

Id.

The same reasoning applies here. The evidence presented at trial was not complex and

5 - OPINION & ORDER

the trial lasted only three days, with the third day reserved for closing argument, instructing the jury, and jury deliberations.  I deny defendants' request for $2,281.25 in daily trial transcripts.

II.  Witnesses

Defendants seek costs for four witnesses as follows:  (1) $1,152.43 for Michael Walpole; (2) $1,386.26 for Miles Houze; (3) $2,933.72 for Susan Burleigh; and (4) $1,309.49 for Karyn O'Donnell.

The computation of witness fees is governed by 28 U.S.C. § 1821.  Under section 1821(d), a subsistence allowance, in an amount not to exceed the per diem allowance prescribed by the Administrator of the General Services Administration for federal government employees under 5 U.S.C. § 5702(a), is paid to witnesses who must stay overnight.  18 U.S.C. § 1821(d)(1)-(3).  Currently, the maximum per diem subsistence rates applicable to Portland, Oregon are $113 for hotel and $66 for meals and incidental expenses (MIE).  http://www.gsa.gov/portal/category/100120.  On the first and last day of travel, the MIE per diem is limited to $49.50.  Id.

Additionally, witnesses are entitled to reimbursement for travel by common carrier in the amount of the actual expense "at the most economical rate reasonably available."  28 U.S.C. § 1821(c)(1).  Witnesses are also to be reimbursed for toll charges, ground transportation between the place of lodging and the carrier terminal, and parking fees.  28 U.S.C. § 1821(c)(3).

A.  Walpole

Defendants seek reimbursement for two nights of lodging on February 7 and 8, 2012, at the per diem rate of $113/night.  They also seek $105.03 for MIE, which is less than the total of $165 MIE allowed based on two days at $49.50 per day and one day at $66 per day.  As for travel

6 - OPINION & ORDER

expenses, defendants seek a total of $821.40, which includes costs for airfare, ground transportation, and parking.

Plaintiff objects to the fact that Walpole, who testified on February 8, 2012 for approximately one hour, seeks costs for a second night in Portland when the record shows that he traveled on one-way tickets.  Plaintiff argues that given the one-way air tickets, Walpole had a certain amount of flexibility on his return trip and thus, his second night of lodging in Portland was unnecessary.  Plaintiff objects to one-half of Walpole's hotel and lodging expenses and one-third of the $36 parking charge.

I agree with plaintiff and thus, I award Walpole $113 for lodging, $52.52 for MIE, and $24 for parking.  The award for Walpole is $165.52 for subsistence (hotel and MIE), and $809.40 for travel expenses, for a  total award of $974.92.

B.  Houze

Defendants seek reimbursement for four nights of lodging on February 6, 7, 8, and 9, 2012, at $113/night.  They also seek $104.25 for MIE, below the total of $231 MIE allowed based on two days at $66 per day and two days at $49.50 per day.

Defendants seek $830.01 in travel expenses for Houze, including costs for airfare, ground transportation, and parking.  Plaintiff initially objects to three individual expenses.  First, plaintiff objects to a $42 charge for ground transportation because it is dated February 13, 2012, after the conclusion of the trial and after Houze returned to California.  I agree with plaintiff that this charge should be denied.  Next, plaintiff objects to a $96.10 charge for "supplies," also incurred after the trial and well after Houze returned to California.  While I agree with plaintiff that the charge is inappropriate, my calculations show that defendants are not seeking reimbursement of

this charge.[1]  Finally, plaintiff challenges the $150 airline change fee which plaintiff argues is not

a normal travel expense.  I agree with plaintiff that this fee is not allowable because incurring a

cost to change a flight is not "utiliz[ing] a common carrier at the most economical rate reasonably

available."  18 U.S.C. § 1821(c)(1).

        In addition to these specific objections, plaintiff argues that Houze, who testified for less

than one-half day on February 8, 2012, did not need to incur lodging and food charges for four

nights in Portland.  Plaintiff argues that Houze's lodging expenses should be limited to two

nights, his food limited to three of the four days that food charges were incurred, and the $149

parking fee limited to three of the five days charged.  I agree.  Thus, Houze's claimed expenses

are reduced as follows:  hotel for two nights is allowed at $226, food charges are allowed in the

amount of $78.19 (75% of the $104.25 claimed), and parking is allowed in the amount of $89.40

(60% of the $149 claimed).

        The award for Houze is $304.19 for subsistence (hotel and MIE), and $578.41 for travel

expenses, for a total award of $882.60.

        C.  Burleigh

        Defendants seek reimbursement for four nights of lodging at $113/night.  The expense

report submitted in support of the costs for Burleigh is confusing regarding her lodging dates

because it shows the four nights commencing February 2, 2012, five days before the start of trial,

yet also shows air travel on February 6, 2012, and meal expenses February 6 - 10, 2012.  Ex. A to

---

        [1]  As I calculate Houze's travel expenses, the total of $830.01 sought by defendants is
based on the following expenses:  $377.81 for airfare, $43.20 for ground transportation, $25 for
baggage fee, and $18 for ground transportation (all incurred February 6, 2012), $150 for airline
change fee, $42 for ground transportation, $25 for baggage fee, and $149 for parking (all on
February 10, 2012).  Ex. A to Langley Affid. at p. 4.

8 - OPINION & ORDER

Langley Affid. at p. 9.  No receipts are submitted to clarify the dates.  Because Burleigh was Lilly's designated corporate representative and attended all three days of trial, I assume her lodging dates in Portland were February 6, 7, 8, and 9, 2012, and that the February 2-5, 2012 dates are mistaken.

Defendants also seek $184.22 for MIE, below the total of $231 MIE allowed based on two days at $66 per day and two days at $49.50 per day.  As for travel expenses, defendants seek $2,297.30 for air fare, baggage, ground transportation, and parking.

Plaintiff argues that Burleigh's recoverable expenses are limited to those related to her status as a witness and not as the corporate representative.  Because she testified for less than one hour on one day, plaintiff contends Burleigh is entitled to one night's lodging and one day of food expenses.  Plaintiff additionally argues that Burleigh's travel expenses are not recoverable at all because they were related to her role as corporate representative.

Several district courts have recognized that because section 1920 does not allow reimbursement for the costs of a party, a corporate representative's expenses are not taxable.  E.g., Honestech, Inc. v. Sonic Solutions, 725 F. Supp. 2d 573, 583 (W.D. Tex. 2010), aff'd, 430 Fed. Appx. 359 (5th Cir. 2011); Ezelle v. Bauer Corp., 154 F.R.D. 149, 154-55 (S.D. Miss. 1994).  However, the same courts recognize that when the corporate representative testifies as a witness, it is appropriate to award costs related to that activity.  E.g., Honestech, 725 F. Supp. 2d at 583; Ezelle, 154 F.R.D. at 155.

Burleigh testified on February 8, 2012, for less than one hour.  Her attendance at trial on February 7 and 9, 2012 was in her role as a corporate representative.  She is entitled to costs related to her role as a witness, not as a corporate representative.

9 - OPINION & ORDER

As with Walpole, because Burleigh testified for less than one hour on one day, her reasonable subsistence expenses are limited to one night of lodging.  Thus, I award $113 for her hotel and one-quarter of the $184.22, or $46.06, for her MIE expenses.

As for her airfare and travel expenses, although Ezelle held that the defendant's corporate representative was entitled to the statutory subsistence allowance for the time he appeared as a witness, the court disallowed the requested airfare because the court "view[ed] the air fare expense . . . to be a cost incurred by [the corporate representative] in his capacity as corporate representative . . . , and not in his capacity as a witness."  Id.  154 F.R.D. at 155.  I do not find this explanation particularly helpful and no other explanation is provided.  While some courts have followed the practice, again without explanation, e.g., Honestech, 725 F. Supp. 2d at 583 (citing Ezelle for the proposition that "airfare expense is a cost incurred in the person's capacity as corporate representative" and providing no further discussion), other courts have awarded airfare to the corporate representative as a witness expense, treating the corporate representative the same as other witnesses who are entitled to recover that cost under the statute.  Trammel v. BASF Corp., No. 99C6897, 2002 WL 59114, at *6 (N.D. Ill. Jan. 14, 2002) (awarding round trip airfare to corporate representative who testified at trial); 28 U.S.C. § 1821(c)(1).

Because Burleigh testified as a witness, her travel expenses are recoverable.  However, I agree with plaintiff that the amounts sought are excessive and in one instance, the request is unjustified.  Defendants seek $1,279.40 for air travel on February 6, 2012, $606 for air travel on February 10, 2012, and $280.60 for air travel on February 11, 2012.  As to the February 11, 2012 charge, defendants fail to explain why it is compensable at all when it was incurred two days after a verdict was rendered and when it appears to be a second, additional charge for Burleigh's

return to Indianapolis from Portland which was charged the previous day.

The charges for Burleigh's other flights are much higher than those for other Indianapolis-based witnesses. Walpole's total airfare was $694 and O'Donnell's was $737.06. Burleigh's flights, omitting the $280.60 charged on February 11, 2012, total $1,885.40. Without an explanation from defendants as to why the amount is so high, I decline to award it. I award $750 in airfare for Burleigh. The remaining travel charges related to parking and ground transportation are also awarded in the amount of $131.30.[2]

The award for Burleigh is $159.05 for subsistence (hotel and MIE), and $881.30 for travel expenses, for a total award of $1,040.35.

D.  O'Donnell

Defendants seek reimbursement for two nights of lodging on February 7 and 8, 2012, at $113/night. They also seek $55.43 for MIE, below the total of $165 MIE allowed based on one day at $66 per day and two days at $49.50 per day. For travel expenses, they seek a total of $1,028.06 for airfare, parking, and ground transportation, including a $150 airline change fee.

Plaintiff objects that none of the costs for O'Donnell are recoverable because she never testified. But, as plaintiff's counsel certainly recalls, it was plaintiff who intended to call O'Donnell as a witness and plaintiff who decided not to call her. Plaintiff identified O'Donnell, a human resources representative for Lilly, as a witness in her witness list filed January 3, 2012. There, plaintiff stated that she intended to call O'Donnell to testify about the complaints

---

[2]  Plaintiff objects to a $20 parking charge because the date on the expense summary is February 2, 2012, several days before the trial started. As explained above, some of the dates on Burleigh's expense summary appear to be in error and I assume this charge was incurred on February 6, 2012, her first day of travel and thus, I award it.

11 - OPINION & ORDER

O'Donnell received from plaintiff regarding her pregnancy and pregnancy discrimination, and the documentation of those complaints. Defendants identified O'Donnell as a witness, but clearly indicated she would be called by defendants only if I overruled defendant's objections to the evidence of plaintiff's complaints.

At the pretrial conference on January 30, 2012, I sustained defendants' objections to Exhibits 31 and 33 containing plaintiff's complaints to human resources because of the hearsay statements contained in those exhibits. I indicated, however, that depending on what testimony came out during the cross-examination of plaintiff, the exhibits may become admissible.

At the close of the pretrial conference, plaintiff's counsel raised a question regarding whether defendants would voluntarily produce certain witnesses, including O'Donnell. There was a substantial amount of discussion regarding the parties' previous discussion as to whether defendants would voluntarily produce these witnesses or whether plaintiff would have to subpoena them. Defendants argued that given my ruling on the motions in limine and Exhibits 31 and 33, the witnesses were not needed and the testimony was not relevant. Defendants agreed to voluntarily produce certain witnesses, but refused to voluntarily produce O'Donnell. Initially, given that the trial was one week away and that I still believed O'Donnell's testimony could be admitted depending on plaintiff's cross-examination, I requested that defendants arrange to have O'Donnell appear. Defendants agreed to do so. However, after further argument, I told the parties that I was not, at that point, directing defendants to produce O'Donnell. Instead, I allowed plaintiff to submit supplemental authority regarding the admission of Exhibits 31 and 33.

On February 3, 2012, having considered plaintiff's supplemental authority, I told counsel during a telephone conference that I was adhering to my prior ruling and sustaining defendants'

objections to Exhibit 31 and 33. I also told counsel that I continued to believe that the evidence

may still be admissible, perhaps as a prior consistent statement, although I made no definitive

ruling on that issue. I also suggested that because my ruling impacted travel arrangements for

two witnesses, one of whom was O'Donnell, I was hopeful the parties would agree on a

stipulation to eliminate the need for the witnesses to travel to Portland for what could ultimately

be testimony on a very narrow issue. I further indicated that absent such an agreement, plaintiff

may well need O'Donnell and the other witness here in person.

With this backdrop, I allow costs for O'Donnell's travel to Portland, even though plaintiff

did not call her as a witness. Defendants never changed their position that O'Donnell's testimony

was irrelevant and the exhibits inadmissible. Plaintiff's insistence that O'Donnell's testimony was

relevant and admissible and that she be made available in person caused defendants to incur the

costs of bringing O'Donnell to Portland.

I agree with plaintiff that the airline change fee of $150 is not recoverable. However, I

disagree with plaintiff that the $60 ground transportation charge dated February 10, 2012, is

unrecoverable because it was incurred after O'Donnell returned to Indianapolis. A close reading

of her expense summary shows that O'Donnell spent a third night in Portland, on February 9,

2012, for which she is not seeking reimbursement. But, that means she returned to Indianapolis

on February 10, 2012, and she incurred the ground transportation charge on that date.

The award for O'Donnell is $281.43 for subsistence (hotel and MIE), and $878.06 for

travel expenses, for a total award of $1,159.49.

III. Copies

Defendants seek $130.64 in costs for obtaining copies of plaintiff's medical records.

13 - OPINION & ORDER

Plaintiff does not object.  I award the requested amount.

IV.  Summary

Under section 1920(2), defendants are awarded $2,834.70 in transcript costs.  Under section 1920(3) defendants are awarded $4,057.36 in witness expenses.  Under section 1920(4), defendants are awarded $130.64 in copying costs.

CONCLUSION

Defendants' Bill of Costs [124] is granted in part and denied in part.  Costs are awarded in the amount of $7,022.70.

IT IS SO ORDERED.

Dated this ___7th_____ day of ___May_____, 2012

/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

14 - OPINION & ORDER